# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| CINDY LOWE, | ) |
|     *Plaintiff*, | ) Case No. 4:16-cv-83 |
| v. | ) Judge Travis R. McDonough |
| COFFEE COUNTY, TENNESSEE, DANNY FERRELL, and MICHAEL JARVIS, | ) Magistrate Judge Christopher H. Steger |
|     *Defendants*. | ) |

## MEMORANDUM AND ORDER

Before the Court is a motion for summary judgment filed by Defendants Danny Ferrell, Michael Jarvis, and Coffee County, Tennessee ("Coffee County") (Doc. 20). For the following reasons, Defendants' motion for summary judgment will be **GRANTED**.

## I. BACKGROUND[1]

On May 24, 2015, Joseph Floied, Plaintiff's boyfriend, discovered a text message on Plaintiff's phone from Dallas Rife, Plaintiff's former boyfriend. (Doc. 22-1, at 86.) According to Plaintiff, Floied physically confronted her about the message, then used Plaintiff's phone to call Rife. (*Id.*) When Rife answered, Floied was on the line threatening him, and Rife heard screaming and crying in the background. (*Id.* at 29.) Soon thereafter, Rife called the Coffee County Sheriff's Department to report the call and requested that it send an officer to check on Plaintiff. (*Id.*)

---

[1] For the purposes of summary judgment, the Court will view the facts in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Shortly before 10:00 p.m., Defendant Jarvis and Deputy Sheriff Andy Neesmith responded to the call and arrived at 105 Harper Road to conduct a welfare check on Plaintiff. (*Id.* at 17.) The house was dark and quiet, and the officers had to knock on the door several times before Plaintiff's teenage son finally answered. (*Id.*) The officers asked Plaintiff's son to retrieve his mother, and she eventually emerged from a bedroom. (*Id.* at 18.) According to Jarvis, although Plaintiff appeared nervous and on edge, she insisted everything was okay. (*Id.*) After Jarvis noticed "a little bit of blood" on Plaintiff's nose and "a round circular red mark on her arm," he decided to keep asking questions. (*Id.* at 18–19) He pulled both Plaintiff and Floied onto the porch, where Floied began apologizing profusely to Plaintiff. (*Id.* at 19.) Both Jarvis and Neesmith noticed three scratch marks on Floied's chest. (*Id.* at 21, 73.) Based on these observations, Jarvis suspected that domestic violence had occurred between Plaintiff and Floied and brought Plaintiff inside the house to speak with her while Neesmith remained on the porch with Floied. (*Id.* at 19.) According to Plaintiff, while she was inside with Jarvis, Jarvis told her that she "shouldn't let him do this to [her]" and that she "should be God's gift not a punching bag." (*Id.* at 90.) Eventually, Plaintiff acknowledged to Jarvis that Floied had assaulted her. (*Id.* at 20.)

Meanwhile, Neesmith spoke with Floied on the porch. (*Id.* at 73.) When Neesmith asked Floied how he got the marks on his chest, Floied responded that he was scratched earlier at work. (*Id.*) Though Neesmith did not believe Floied, he told Jarvis what Floied had told him about the cause of the scratch marks when he went inside. (*Id.* at 74.)

Jarvis returned to the porch to question Floied. (*Id.* at 21.) Floied, hesitant to answer Jarvis's questions at first, finally admitted "to biting [Plaintiff] on the arm after she had struck him in the face with her elbow three times." (*Id.*) According to Jarvis, at that point he realized

that he had "not one but possibly two victims of domestic assault," as well as conflicting accounts of who struck the first blow. (*Id.*) Based on this information, Jarvis did not believe that he had probable cause to arrest Floied. (*Id.* at 22.) According to Plaintiff, however, Jarvis "indicated" to her multiple times that he was going to arrest Floied. (*Id.* at 91.)

At some point during the incident, Neesmith learned that Floied was the younger brother of Adam Floied, Assistant Chief of the Manchester Police Department. (*Id.* at 74.) According to Plaintiff, after Neesmith told Jarvis of this relation, he immediately called Adam Floied. (*Id.* at 90.) Plaintiff testified that Jarvis called Adam Floied "[j]ust to let him know what's going on as a courtesy call." (*Id.*) According to Jarvis, he called Adam Floied for "some outside corroboration" because he was still unsure who the primary aggressor was. (*Id.* at 23.) However, he also indicated that he made the call as a "courtesy" and to keep "interdepartmental" harmony. (*Id.* at 24.)

Jarvis kept questioning Plaintiff and Floied, but continued to receive conflicting accounts. (*Id.* at 25.) He believed he could not arrest both parties, and both parties "just wanted [Floied] to leave." (*Id.* at 26.) Finally, when Adam Floied arrived, Jarvis released Floied to him, but instructed Floied not to make any contact with Plaintiff whatsoever. (*Id.* at 26–27.) Jarvis and Neesmith told Plaintiff that Floied had left with his brother, provided Plaintiff with information about domestic abuse, then left. (*Id.* at 31, 101.)

A few days later, after obtaining a copy of Jarvis's incident report, Plaintiff met with Defendant Danny Ferrell, an investigator with the Coffee County Sheriff's Department, to discuss the incident. (*Id.* at 97.) Ferrell asked Plaintiff whether the report was accurate. (*Id.*) According to Plaintiff, Ferrell told her that he could "tell who the aggressor [was]," even though the report "didn't make sense," and assured her that she would not be arrested. (*Id.*)

3

After investigating further, Ferrell contacted District Attorney Craig Northcott to seek legal counsel regarding his best course of action. (*Id.* at 9.) Northcott agreed that probable cause existed to charge Plaintiff with domestic assault and "took no issue" with Ferrell's decision to issue a criminal summons to both Plaintiff and Floied. (*Id.*) On July 2, 2015, a criminal summons was issued to both Plaintiff and Floied charging them with domestic assault. (*Id.* at 68–71, 99.) Plaintiff was not arrested, but "had to go back up to the sheriff's office at some point and sign papers." (*Id.* at 99.) She was never required to post bond or spend any time in jail. (*Id.*) Plaintiff had to go to court "several times" due to various delays. (*Id.* at 100.)

On July 8, 2016, the State of Tennessee dismissed the charge against Plaintiff "because of procedural concerns." (*Id.* at 7–8.) The State also dismissed the charge against Floied. (*Id.*) Plaintiff filed the instant complaint on July 26, 2016, asserting claims against Defendants for malicious prosecution under 42 U.S.C. § 1983 and under state law.[2] (Doc. 1.) Defendants filed a motion for summary judgment on December 11, 2017, seeking dismissal of all of Plaintiff's claims. (Doc. 20.) Defendants' motion is now ripe for review.

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*,

---

[2] It is not clear whether Plaintiff asserts a state-law claim for malicious prosecution in her complaint. (*See* Doc. 1, at 9–11.) However, Defendant argues for summary judgment on a state-law claim as if Plaintiff had asserted one, and Plaintiff responds in opposition. (*See* Docs. 22, 23.) Accordingly, the Court will proceed under the assumption that Plaintiff asserts a state-law claim for malicious prosecution.

4

253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### a. *Federal Claim for Malicious Prosecution*

Defendants argue that they are entitled to summary judgment because no genuine issue of material fact exists as to Plaintiff's claim for malicious prosecution under federal law. (Doc. 22, at 10–22.)

5

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotation omitted). To succeed on a 42 U.S.C. § 1983 claim of malicious prosecution in violation of the Fourth Amendment, a plaintiff must prove that: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "there was a lack of probable cause for the criminal prosecution"; (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure"; and (4) "the criminal proceeding [was] resolved in the plaintiff's favor." *Id.* at 308–09 (internal citations and quotation marks omitted).

The record lacks sufficient evidence to support an essential element of Plaintiff's malicious-prosecution claim under §1983—namely, that she suffered a deprivation of liberty. The Sixth Circuit has explicitly held that "service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation." *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017). In *Noonan*, the plaintiff asserted a § 1983 claim for malicious prosecution after he was falsely charged with insurance fraud and falsely reporting a felony. *Id.* at 459. When the defendants filed a summary judgment motion contesting that the plaintiff had suffered a deprivation of liberty, the plaintiff asserted that he suffered a deprivation of liberty because he was brought in for questioning multiple times, underwent a polygraph examination, hired an attorney, and attended a court hearing. *Id.* at 462. Moreover, his car was impounded for over five months and the false charges impacted his livelihood as an attorney. *Id.* The district court denied summary judgment, finding a mandatory court appearance sufficient to constitute a deprivation of liberty. *Id.* at 461. On interlocutory

appeal, the Sixth Circuit reversed, holding that neither the summons, court appearance, car impoundment, nor the costs to hire an attorney were sufficient to satisfy the "deprivation of liberty" element of a malicious-prosecution claim under § 1983. *Id.* at 462–63.

Similarly, here, Plaintiff did not suffer a deprivation of liberty. By Plaintiff's own account, she was never arrested, but was only served with a criminal summons. (Doc. 22-1, at 99.) She never posted bond or spent any time incarcerated. (*Id.*) Although she had to go to court "several times" (*id.* at 100), *Noonan* makes clear that even mandatory court appearances are not sufficient to constitute a deprivation of liberty.[3] Even viewing the evidence in the light most favorable to Plaintiff, no genuine issue of material fact exists as to whether Plaintiff suffered a deprivation of liberty. Accordingly, Plaintiff cannot establish an essential element of her federal claim for malicious prosecution, and the Court will **DISMISS** Plaintiff's § 1983 malicious-prosecution claim against Defendants.[4]

---

[3] Plaintiff acknowledges that "the recent decision in *Noonan* appears to have rendered [her] claims moot as she can only demonstrate a deprivation of liberty of her being compelled to appear for court appearances." (Doc. 23, at 7.) Instead, Plaintiff urges the Court to rely on a Sixth Circuit opinion that was overruled by *Noonan* and a concurring opinion in a decision by the Supreme Court. *See Albright v. Oliver*, 510 U.S. 266, 279 (1994) (Ginsberg, J., concurring) (noting that an individual is "seized" when "the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court"); *Bacon v. Patera*, 772 F.2d 259, 265 (6th Cir. 1985) (finding a summons sufficient to constitute a deprivation of liberty); *see also Noonan*, 683 F. App'x at 463 ("[W]e must reject *Bacon* from our current jurisprudence."). However, unlike *Noonan*, neither of these decisions constitutes binding precedent on the Court.

[4] To the extent Plaintiff alleges a separate malicious-prosecution claim against Defendant Coffee County, her claim must necessarily fail. "[M]unicipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). "There can be no liability [against a municipality] without an underlying constitutional violation." *Id.* Because no underlying violation occurred here, Defendant Coffee County cannot be liable to Plaintiff.

### b. *State Claim*

Having dismissed Plaintiff's claim under federal law, her only remaining claim is a state-law claim for malicious prosecution between non-diverse parties. When state-law claims are brought in federal court by non-diverse parties, the Court may hear such claims only through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. District courts have discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Continuing to exercise supplemental jurisdiction should only be done "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [ ] concern over needlessly deciding state law issues." *Id*. (internal quotation omitted). When "all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The factors set forth in 28 U.S.C. § 1367 weigh against exercise of supplemental jurisdiction over Plaintiff's remaining claim. The Court finds that the interests of judicial economy and abstention from needlessly deciding state-law issues weigh in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim. Accordingly, the Court will **DISMISS** Plaintiff's state-law malicious-prosecution claim **WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 20) is **GRANTED**. Plaintiff's malicious-prosecution claim under 42 U.S.C. § 1983 is hereby **DISMISSED WITH PREJUDICE**. Plaintiff's malicious-prosecution claim under state law is hereby **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

> */s/ Travis R. McDonough*
> **TRAVIS R. MCDONOUGH**
> **UNITED STATES DISTRICT JUDGE**